***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Donovan with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as: *Page 2 
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The defendant was a duly qualified self-insured, with Gallagher Bassett Services, Inc., acting as its servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff sustained an injury on September 26, 2002, when he stepped on a nail with his left foot while working for the defendant.
5. The plaintiff's average weekly wage was $350.46, which yields a compensation rate of $233.65 per week, based upon the Form 22.
6. Subsequent to the submission of the plaintiff's medical records before the Deputy Commissioner, the parties stipulated that a portion of the records from Carolina Neurological Associates (pp. 39-42 of Stipulated Exhibit # 1) were entered in error and are not the plaintiff's records. The remaining records from Carolina Neurological Associates (pp. 43-44) are the plaintiff's records.
7. The issue for determination is whether the plaintiff's back condition is causally related to the work injury of September 26, 2002.
8. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit # 1:The plaintiff's medical records; and
 b. Stipulated Exhibit # 2:A Form 22 Wage Chart.
 *********** *Page 3 
Additionally, the Full Commission makes the following:
 EVIDENTIARY RULINGS
Attached to the plaintiff's contentions to the Deputy Commissioner were medical records of treatment received by the plaintiff subsequent to the hearing before the Deputy Commissioner, including a permanent partial disability rating to the plaintiff's back. The defendant moved to have these documents excluded from the Record. The Deputy Commissioner denied the defendant's motion, and the medical records were received as part of the Record in this case. The Full Commission hereby upholds the Deputy Commissioner's ruling as to such medical records.
Subsequent to the closing of the record before the Deputy Commissioner, the defendant offered into evidence the plaintiff's work attendance records which, although sought prior to the hearing before the Deputy Commissioner in this matter, were not received by the defendant until after the record had closed. Having received no objection from plaintiff, the Deputy Commissioner reopened the record in this matter for the sole purpose of receiving the plaintiff's work attendance records. The Full Commission hereby upholds the Deputy Commissioner's reopening of the record for the purpose of receiving the plaintiff's work attendance records.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was age 37. The plaintiff was employed by the defendant as a driver of a garbage truck, and his duties included unloading containers into the truck. *Page 4 
2. On Thursday, September 26, 2002, the plaintiff was walking in ankle-deep mud at a landfill when his left foot stepped on a board with a nail sticking out of it. The nail pierced the plaintiff's boot and foot, going almost all the way through plaintiff's foot. The plaintiff presented to Northern Hospital of Surry County Emergency Department where x-rays revealed no acute fractures, dislocations, or radiopaque foreign bodies in the foot. The plaintiff was treated and released, and returned to work on Monday, September 30, 2002.
3. On October 3, 2002, the plaintiff returned to Northern Hospital with complaints of lower back pain that he said he noticed upon getting in and out of the truck at work. The plaintiff was treated with medication and an MRI was scheduled. The MRI was performed on October 6, 2002, and showed broad based disc bulge with a small central disc herniation at L4-5 without neural foraminal stenosis, and a right paramedian disc herniation with mass effect upon the right S1 nerve root at L5-S1 with no left-sided neural foraminal stenosis.
4. On October 10, 2002, the plaintiff presented to Joseph Benjamin Copper, PA-C, with Downtown Health Plaza with complaints of right leg weakness and pain. The plaintiff had a negative straight leg raise on the right side, indicative of a lack of herniated disc problems. The plaintiff was diagnosed with radiculopathy in the right lower extremity. Mr. Copper wrote the plaintiff out of work from October 10 through October 20, 2002.
5. The plaintiff presented to Dr. Steven S. Glazier upon referral by Mr. Copper on October 28, 2002.Dr. Glazier reviewed the plaintiff's MRI and performed an examination. Dr. Glazier noted the paramedian disc herniation at L5-S1 to the right and opined that the plaintiff's back and right leg pain were not related to the plaintiff's work. He further opined that the plaintiff's condition did not warrant surgical intervention. *Page 5 
6. Mr. Copper opined that the plaintiff's foot injury caused him to "walk in an unnatural way."He further opined that the MRI "suggests the presence of degenerative disc disease" that was brought out by an accident or unrelated trauma, and that plaintiff's "L5-S1 herniated disc would not have occurred without the pre-existing degenerative disc disease."
7. On January 10, 2003, the plaintiff presented to Nurse Practitioner Mark M. Mayes with Primary Care in Winston-Salem with complaints of chronic knee pain, lower back pain, and depression. Mr. Mayes attributed the plaintiff's back pain to a change of gait due to the foot injury of September 26, 2002, which caused the plaintiff to put extra pressure on his right leg. Mr. Mayes admitted that he had no training in orthopedics or neurosurgery and that he would defer to opinions rendered by orthopedists and neurosurgeons who had examined the plaintiff.
8. On January 13, 2003, the plaintiff presented to Dr. William O. Bell of Carolina Neurosurgical Associates for a second opinion. Dr. Bell noted that "there may be a small ruptured disc at L5-S1 on the right, but there is no clear compression of the nerve roots at L4-5 or L5-S1."He found that the plaintiff's "back is normal."Dr. Bell also found a negative straight leg raising and noted that the motor examination was normal. He prescribed medication and returned the plaintiff to work. Dr. Bell opined that if the plaintiff's symptoms did not improve, he would recommend epidural steroid injections.
9. On May 15, 2003, the plaintiff underwent a second MRI, which was compared to the one done on October 6, 2002.The comparison showed "continuing evidence of a broad based disc bulge on a small central protrusion of disc material that is associated with a focal annular disc tear" at L4-5, and "only a mild relative reduction in adjacent NF dimensions."At L5-S1, the MRI showed "a central and right subarticular as well as foraminal protrusion of disc *Page 6 
material."The conclusion was that there was "no substantial interval change in the overall appearance of the lumbar spine."
10. Upon receipt of the MRI results, Mr. Mayes referred the plaintiff to neurosurgeon Dr. Joseph Alexander, and on May 30, 2003, Mr. Mayes wrote the plaintiff out of work until he could be examined by Dr. Alexander. The plaintiff presented to Dr. Alexander on June 6, 2003.Following an examination and review of the plaintiff's MRIs, Dr. Alexander diagnosed the plaintiff with low back and leg pain resulting from "significantly deteriorated disks at L4-5 and L5-S1."He opined that the repeat MRI was "essentially unchanged from that performed last fall," and that there was no surgical intervention indicated by the plaintiff's symptoms. Dr. Alexander further opined that the plaintiff should seek a less physically stressful occupation and recommended that the plaintiff seek an independent medical evaluation and functional capacity evaluation through his primary care physician. Lastly, Dr. Alexander opined that a need for further neurological follow-up was not anticipated.
11. In October 2003, the plaintiff began a new job working for an electrical contractor earning a wage greater than that which he earned at the time of his injury on September 26, 2002.
12. Due to their training and experience, the opinions of Drs. Glazier, Bell, and Alexander are given greater weight than that of Nurse Practitioner Mayes and Physician Assistant Copper.
13. The Full Commission finds that the plaintiff suffered a compensable injury on September 26, 2002, when in the course of his employment he stepped on a nail and injured his left foot.
14. The Full Commission finds that the plaintiff's current back condition is the result of degenerative disc disease that occurred over a long period of time and has not been shown by *Page 7 
expert medical testimony to be related to his compensable injury of September 26, 2002, or to any other aspect of the plaintiff's employment with the defendant.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The plaintiff sustained an injury by accident arising out of and in the course of the employment on September 26, 2002.N.C. Gen. Stat. § 97-2(6).
2. As a result of the compensable injury, the plaintiff is entitled to medical treatment to be paid for by the defendant relating to the treatment for the foot injury suffered on September 26, 2002.N.C. Gen. Stat. § 97-2(19).
3. The plaintiff is not entitled to temporary total disability compensation for time missed from work as a result of his compensable injury as he did not miss the requisite number of days to be eligible under the Act. Furthermore, the plaintiff is not entitled to temporary total disability compensation for time missed from work as a result of his ongoing back problems, as this condition has not been shown to be causally related to his compensable injury of September 26, 2002.N.C. Gen. Stat. § 97-2.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. The defendant shall pay for all medical treatment related to the plaintiff's September 26, 2002, left foot injury. *Page 8 
2. Under the law, the plaintiff's claims for additional compensation based on his pre-existing back condition must be and are hereby DENIED.
3. Each party shall bear their own costs.
This the 8th day of May 2006.
S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________________ THOMAS J. BOLCH COMMISSIONER
 S/____________________ BUCK LATTIMORE CHAIRMAN *Page 1